1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
For the Northern District of California

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

LAMUMBA CORPORATION, GEOFFREY
PETE, DENNIS JEFFREY dba THE PRINT
SHOP, 3J's AND BH ENTERPRISES, a
partnership, RALBERT BROOKS
HAMILTON, on behalf of themselves and all
others similarly situated,

                    Plaintiffs,

    v.

CITY OF OAKLAND, JANE BRUNNER,
member of the City Council in her official
capacity, HENRY CHANG, member of the
City Council in his official capacity,
IGNACIO DE LA FUENTE, member of the
City Council in his official capacity, NANCY
NADEL, member of the City Council in her
official capacity, JEAN QUAN, member of the
City Council in her official capacity, LARRY
REID, member of the City Council in his
official capacity,

                    Defendants.

_____/

No. C 05-2712 MHP

**MEMORANDUM & ORDER**
**Re: Defendants' Motion to Dismiss**

On July 1, 2005 plaintiffs Geoffrey Pete, the Lamumba Corporation, Dennis Jeffrey dba The

Print Shop, Ralbert Brooks Hamilton, and 3J's and BH Enterprises, brought this class action against

the city of Oakland (the "City") and several city council members (together, the "defendants"),

alleging discrimination in the administration of loan and contracting services and seeking monetary

damages and injunctive relief pursuant to the Civil Rights Act of 1866, 42 U.S.C. sections 1981 and

1983, and Title VI of the Civil Rights Act of 1964, 28 U.S.C. section 2000d. Now before the court is

defendants' motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief can

be granted. Having considered the parties' arguments and for the reasons stated below, the court

enters the following memorandum and order.

1  BACKGROUND[1]

2      Plaintiffs are all self-described black businessmen or black-owned businesses based in
3  Oakland California.  Plaintiff Geoffrey Pete is the Chief Executive Officer of plaintiff Lamumba
4  Corporation ("Lamumba").  Plaintiff Dennis Jeffrey runs his own business ("The Print Shop").
5  Plaintiff 3J's and BH Enterprises ("BH Enterprises") is a partnership and one of its partners is
6  plaintiff Ralbert Brooks Hamilton ("Brooks Hamilton").

7      Plaintiffs allege that during the class period, which runs from 2001–2005, the following
8  occurred. Defendants approved and promised loans and grant funds to plaintiffs pursuant to the
9  City's loan programs.  However, the disbursements were delayed and only a portion of the approved
10  funds was subsequently paid out to these black businesses and professionals.  Plaintiffs relied on the
11  promised loan disbursements and as a result suffered business and personal financial losses.
12  Additionally, defendants have required black businesses and business persons—and not required
13  non-black businesses or business persons—who qualify for these loans to use their personal assets to
14  collateralize the loans.  Defendants have also provided loan terms which are more favorable to non-
15  Black businesses and they have been more aggressive in their efforts to collect loans that have been
16  defaulted by Black businesses and business persons.

17      Plaintiffs allege that during the class period the City was required, pursuant to the portion of
18  its charter relating to bids and awards (the "Charter"), to conduct a race and gender disparity analysis
19  and to remedy any discrimination that was discovered in the study.  During the same period,
20  plaintiffs assert, defendants have disregarded the guidelines and procedures outlined in their own
21  internal policies (the "Hire Oakland and Oakland Equity Policies")—policies which are intended to
22  "devise guidelines and implement procedures aimed at preventing discriminatory [p]olicies by
23  [d]efendants." FAC ¶ 30. In 1996, the City commissioned its own study (the "Disparity Study")
24  which found evidence of discrimination against Black Businesses in contract awards and financial
25  assistance from the City.  The results of this study are valid until 2006.  Further, in 2005, a group
26  concerned with the underutilization of Black businesses by the City (the "Unity Group") found that
27  as a result of unwillingness on the part of the City to implement policies and procedures to curb
28  discrimination, significant disparities persisted.  Plaintiffs allege that the City has failed to conduct

UNITED STATES DISTRICT COURT
For the Northern District of California

1  the Charter disparity analysis and refused to adopt the recommendations of the Disparity Study, the
2  Unity Group or its own Hire Oakland and Oakland Equity Policies. As a result, discriminatory
3  policies have not been remedied, depriving plaintiffs of contracting, lending and grant award
4  opportunities.

5         Plaintiffs have brought this action, purporting to represent a class of black businesses and
6  professionals who have been aggrieved by the City's discriminatory "purchasing,
7  professional/personal services, construction contracting, lending and grant award practices, policies,
8  and customs." FAC ¶ 1. Additionally, plaintiffs \allege as a part of their section 1983 claim that the
9  City has violated their First Amendment free speech rights by retaliating against them for speaking
10 out against the City regarding its allegedly discriminatory practices.

11        Prior to the filing of the current action, several of the plaintiffs were involved in litigation
12 involving the management and disbursement of government loans. In 2001, plaintiffs Brooks
13 Hamilton and BH Enterprises sought a preliminary injunction in federal district court, decrying race
14 discrimination in the disbursement of Oakland's Housing and Urban Development ("HUD") loans.
15 After the court granted plaintiffs leave to amend their complaint on two separate occasions, the court
16 dismissed the case for lack of subject matter jurisdiction, finding that there was no private right of
17 action under HUD—a requirement in order for the court to retain jurisdiction after the elimination of
18 the only federal claim in the complaint.

19        The following year, in August of 2002, both plaintiffs (BH Enterprises and Brooks Hamilton)
20 filed a cross-complaint in the Superior Court of California (in Alameda) against the City of Oakland,
21 asserting the same claims—namely negligence, breach of contract, promissory estoppel, race
22 discrimination and injunctive relief with respect to the HUD loan program. Req. Jud. Notice, Exh.
23 C.[2]  In this cross-complaint, BH Enterprises and Brooks Hamilton ("the cross-complainants")
24 alleged that under section 1983 they were the victims of race discrimination between 1996 and the
25 time of the filing. They asserted that they applied and were approved for a $250,000 loan and a
26 $200,000 grant in June of 1996. Cross-complainants alleged that they never received the $200,000
27 grant and the $250,000 loan was not disbursed until the following year on July 15, 1997, even though
28 these sums were supposed to have been issued jointly. Req. Jud. Notice, Exh. C at 9. All of this,

UNITED STATES DISTRICT COURT
For the Northern District of California

3

cross-complainants asserted, was due to racial discrimination on the part of the City Council. After several government demurrers, the cross-complaint was dismissed by the state court without leave to amend. Req. Jud. Notice, Exh. H. In June of 2005, plaintiffs filed yet another action in the state court alleging essentially the same issues. The court granted the City's motion to dismiss for failure to state a claim and res judicata, and dismissed the case with prejudice.

In August of 2003, Brooks Hamilton filed for bankruptcy and on December 5, 2003 he filed a complaint seeking declaratory relief that the City's liens on his property, which were attached pursuant to a breach of his government loan, were void. On May 5, 2004 the case was converted to a Chapter 7 bankruptcy proceeding. In September 2004, the attorney representing Brooks Hamilton was sanctioned under Federal Rule of Bankruptcy Procedure 9011 for filing claims for an improper purpose. The court determined that "the claims asserted in the Bankruptcy Court Complaint were barred by either res judicata or collateral estoppel." Req. Jud. Notice, Exh. I at 11. The court noted that the district court had already determined that the debtor had "no private right of action against the City under the HUD regulations and the statute governing the EEC [Enhanced Enterprise Community] program" and "all of the [then current] causes of action were based on the City's loans to the Debtor pursuant to the EEC Program." Id. at 13, 14. The court did note that Brooks Hamilton appeared to sincerely believe that he had been wronged in the disbursement of his HUD loan and that he "might well [have] believe[ed] that, under these circumstances, he was free to keep asserting [his claims]." See id. at 9.

On June 13, 2005, plaintiff Brooks-Hamilton filed another action in Alameda County Superior Court against the City and the Chapter 7 Bankruptcy Trustee, alleging (1) malicious prosecution, (2) abuse of process, (3) intentional infliction of emotional distress, (4) conspiracy and (5) injunctive relief. All the claims, with the exception of the malicious prosecution claim, concerned the City's loan program. Defendants filed a motion to dismiss asserting a failure to state a claim and res judicata. On October 3, 2005 the court dismissed the case with prejudice. See Supp. Req. Jud. Notice, Exh. K.

On July 1, 2005 plaintiffs filed the instant action in this court, asserting racial discrimination in the City's lending, professional services, and contracting policies as well as an unwillingness on

4

the part of the City to implement policies aimed at increasing diversity. On September 29, 2005 defendants filed the current motion to dismiss plaintiffs' complaint, asserting that (1) plaintiffs lack standing, (2) their claims are barred under the applicable statute of limitations, (3) some of the named plaintiffs' claims are barred by res judicata and (4) plaintiffs fail to state a claim under any of the statutory grounds alleged. Thus, defendants urge the court to dismiss plaintiffs' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## LEGAL STANDARD

### I.      Motion to Dismiss for Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Unless it appears beyond doubt that a plaintiff can prove no set of facts in support of her claim which would entitle her to relief, a motion to dismiss must be denied. Lewis v. Telephone Employees Credit Union, 87 F.3d 1537, 1545 (9th Cir. 1996) (citation omitted); see also Conley v. Gibson, 355 U.S. 41, 45–46 (1957). When assessing the legal sufficiency of a plaintiff's claims, the court must accept as true all material allegations of the complaint, and all reasonable inferences must be drawn in favor of the non-moving party. See, e.g., Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996) (citations omitted). Dismissal is proper under Rule 12(b)(6) "only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Navarro, 250 F.3d at 732 (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)).

### II.      Res Judicata

The doctrine of res judicata, or claim preclusion, prohibits litigation in a subsequent action of any claims that were raised or could have been raised in a prior action. Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir. 2001) (citations omitted). Under Ninth Circuit law, an adjudication in a prior action serves as a bar to litigation of a claim if the prior adjudication (1) involved the same claim as the later suit; (2) reached a final judgment on the merits and (3) involved the same parties or their privies. Id.; see also Blonder-Tongue, 402 U.S. at 323–24.

5

UNITED STATES DISTRICT COURT
For the Northern District of California

1    In determining whether two claims are identical, the Ninth Circuit employs four criteria: (1)
2  whether the rights or interests established in the prior judgment would be destroyed or impaired by
3  prosecution of the second action; (2) whether substantially the same evidence is presented in the two
4  actions; (3) whether the two suits involve infringement of the same right and (4) whether the two
5  suits arise out of the same "transaction." Nordhorn v. Ladish Co., 9 F.3d 1402, 1405 (9th Cir. 1993);
6  Costantini v. Trans World Airlines, 681 F.2d 1199, 1201–02 (9th Cir.), cert. denied, 459 U.S. 1087
7  (1982) (quoting Harris v. Jacobs, 621 F.2d 341, 343 (9th Cir. 1980)).  The fourth criterion—whether
8  the two suits arise out of the same transaction—is the most important.  Id. at 1202.  It is immaterial
9  whether the claims asserted subsequent to the judgment were actually pursued in the action that led
10  to the judgment; rather, the relevant inquiry is whether they could have been brought. C.D.
11  Anderson & Co. v. Lemos, 832 F.2d 1097, 1100 (9th Cir. 1987).

12    Issue preclusion, also called collateral estoppel, operates similarly but is of a narrower scope.
13  "To foreclose relitigation of an issue under collateral estoppel: (1) the issue at stake must be identical
14  to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior
15  litigation; and (3) the determination of the issue in the prior litigation must have been a critical and
16  necessary part of the judgment in the earlier action."  Clark v. Bear Stearns & Co., Inc., 966 F.2d
17  1318, 1320 (9th Cir. 1992).  Collateral estoppel may be used defensively against a plaintiff when the
18  plaintiff had a "full and fair chance" to litigate the same issue against a different defendant.  Blonder-
19  Tongue Lab., Inc. v. Univ. Ill. Found., 402 U.S. 313, 333, 334–38 (1971); see also Parklane Hosiery
20  Co., Inc. v. Shore, 439 U.S. 322, 329–31 (1979) (comparing defensive and offensive collateral
21  estoppel).

22

23  DISCUSSION

24  I.    Standing

25    Defendants assert that plaintiffs lack standing to make any of the claims asserted because (1)
26  they are not members of the class or classes whose interests they seek to represent and (2) they have
27  not alleged any injury in fact.  A party that seeks to represent a class, must still be able to prove that
28  it personally has suffered an actual injury.  O'Shea v. Littleton, 414 U.S. 488, 494 (1974).  Pursuant

6

to the Supreme Court's holding in Lujan v. Defenders of Wildlife, et. al, 504 U.S. 555 (1992), a party has standing if it has suffered an injury in fact, the injury is fairly traceable to the challenged action, and is redressable by the court. An "injury in fact" is defined as "an invasion of a legally protected interest which is (a) concrete and particularized" and (b) "actual or imminent, not 'conjectural' or 'hypothetical . . .'". Id. at 560.

Defendants assert that plaintiffs are not representative because although they purport to represent a class of all those who have contracted with the City, received professional services, and entered into loans with the City, the only allegations of racial discrimination in the complaint are made with respect to the disbursement of loans from the City. Further, defendant notes that there is an absence of "actual injury" because there is no allegation that any one of the plaintiffs was denied contracts, grants or loans. Plaintiffs contend that they meet the standing requirements because, as stated in their complaint, they have been "qualified, willing, ready and able to enter into purchasing, professional/personal services and construction contracts with the City as Prime Contractors, but have been precluded from doing so as a result of [d]efendants' perpetuation of Policies which exclude and discourage [p]laintiffs from serving as Prime Contractors." FAC ¶ 27.

Defendants are correct that, with respect to the City's contracting and professional service opportunities, plaintiffs' allegations are deficient in that they fail to assert that there was some injury that they personally suffered. There is no allegation in the complaint that plaintiffs attempted to apply for any contracts from the City or that they were the subject of any specific discrimination with respect to the provision of professional services. The mere fact that they were "willing" to contract with or receive professional services from the City does not establish that they experienced any discrimination.

Plaintiffs' reliance on the Supreme Court's holding in Northeastern Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656 (1993) is unavailing. In that case an association of contractors brought suit against the city alleging that an ordinance which gave certain minority-owned businesses preference in the award of city contracts was unconstitutional. The Court found that although the contractors merely alleged that they "would have . . . bid on . . .

designated set aside contracts but for the restrictions imposed," this was sufficient to establish

standing for an equal protection violation. The Northeastern Fla. Chapter court noted that

> when the government erects a barrier that makes it more difficult for a member of one group to obtain a benefit . . . [a member of the excluded group] seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier in order to establish standing . . . The 'injury in fact' element of standing . . . is the denial of equal treatment resulting from the imposition of the barrier—here, the inability to compete on an equal footing in the bidding process.

Northeastern Fla. Chapter, 508 U.S. at 657, 666. However, the Court took great pains to distinguish this holding from that of Warth v. Seldin, 422 U.S. 490 (1975), in which the Court found no standing where there was "no averment that any member [of a group challenging a town zoning ordinance] had applied to respondents for a building permit or a variance with respect to any current project." Northeastern Fla. Chapter, 508 U.S. at 667 (quoting Warth, 422 U.S. at 516). As the Court emphasized, in Northeastern Fla. Chapter as well as in Regents of Univ. Of Cal. v. Bakke, 438 U.S. 265 (1978), "the allegation was that the plaintiff (or the plaintiffs' membership) was excluded from consideration for a certain portion of benefits—in Bakke, places in a medical school class, here, municipal contracts." Northeastern Fla. Chapter, 508 U.S. at 667. That is not the case in the present action. Plaintiffs do not allege that they have been excluded from consideration for certain contracts but rather, similar to Warth, they have alleged discrimination in the award of contracts without any additional allegations that they actually attempted to make any bids or enter into any contracts. Being merely "willing, ready and able" is insufficient to confer standing. Absent any allegations of actual injury, all of the named plaintiffs lack standing to assert claims either in a personal or representative capacity for discrimination in the City's contracting and professional service programs.

Defendants also assert that Lamumba and Geoffrey Pete, separately, lack standing to represent the class of people alleged to have been injured because they received loans from the Redevelopment Agency of the City of Oakland as opposed to the EEC Program which disburses the HUD loans. Defendants contend that the Redevelopment Agency is not a party to this action and plaintiff Geoffrey Pete was not required to secure the loan he received with his personal property, but rather with his commercial property. However, even though the Redevelopment Agency is not a

8

party to the current action, neither is the specific agency in charge of the HUD loans. These agencies are part of the administration of the City—which *is* a party to the instant suit. Indeed the very document which defendants submit in support of their contention is entitled "Redevelopment Agency of the City of Oakland." See Req. Jud. Notice, Exh. M. The court finds that the fact that Geoffrey Pete and Lamumba received their loan through the Redevelopment Agency rather than the EEC Program does not deprive these plaintiffs of standing.

In the case of the City loans, however, plaintiffs do allege that the discrimination they faced was in the disbursement, management and collection of loans which they entered into with the City. The injury lay in the alleged discrimination and the resulting financial loss. The fact that there was no initial denial of these loans is not, as defendants would have this court hold, dispositive. Notwithstanding, all of plaintiffs' claims of discrimination are overbroad, lacking any specific allegations demonstrating how they, personally, have been discriminated against. Plaintiffs' contention that they are only required to demonstrate personal injury for purposes of certification is misguided.[3] See Lujan, 504 U.S. at 560 n.1 (noting that in order to meet the particularity requirement, "the injury must affect the plaintiff in a personal and individual way"). Plaintiffs must allege what specific discriminatory acts or decisions were made with respect to each named plaintiff.

## II.   Statute of Limitations

Defendants assert that the claims of Dennis Jeffrey and Brooks Hamilton under the first, second and third causes of action are barred under the applicable statute of limitations. The Supreme Court has determined that the statute of limitations for section 1981, section 1983 and section 2000d claims is determined by the forum state's personal injury statute of limitations. Wilson v. Garcia, 471 U.S. 261, 275–56 (1985); Goodman & Luken Steel Co., 482 U.S. 656, 661–62 (1987).  In California, the statute of limitations for personal injury is two years. See Cal. Code of Civ. Pro. § 335.1. Plaintiffs argue that the applicable standard of limitations is four years. However this four-year catch-all statute of limitation only applies to causes of action made possible by a post-1990 amendment of section 1981—such as employment discrimination. See Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004). Here, plaintiffs' cause of action is not a post-1990 amendment and

9

the two-year personal injury statute of limitation is applicable. Thus, in order for any of plaintiffs' claims to survive dismissal, they must have occurred on or after July 1, 2003 as the present action was filed on July 1, 2005.

Defendants contend that Dennis Jeffrey's claim is time barred because his loan from the City was approved and a deed of trust executed in March of 1999. Plaintiffs have alleged that the City discriminated against them in the disbursement of the loans and in the attempts at collection. According to defendants, Dennis Jeffrey breached the loan agreement in 2002 and in October of 2002 the City initiated an action against him to recover on the loan. Although plaintiffs are correct that the court may not borrow factual findings from the documents submitted by defendants—for example the date of the loan agreement or the date of breach—the court may take judicial notice of the court filing itself. See Req. Jud. Notice, Exh. P. This filing demonstrates that the City initiated an action for breach in 2002, suggesting that the disbursement of the loan and the attempts at collection pre-dated the July 2003 date. It is evident that none of the alleged discriminatory actions took place within the applicable statute of limitations and the claims advanced by Dennis Jeffrey are thus dismissed.

Defendants also contend that Brooks Hamilton claims are similarly time-barred. However, since Brooks-Hamilton's claims are entitled to dismissal on res judicata grounds, discussed *infra*, the court need not reach this issue.

It is of note that in their briefings and at oral argument, plaintiffs made no attempt to demonstrate that any of the loans were entered into by the named plaintiffs after July 1, 2003. Rather, plaintiffs allege that the fact that the City declined to follow its own policies aimed at increasing minority participation in the loan and grant award programs during the period after July 2003, enables plaintiffs to extend the statute of limitations backward to include any earlier acts under a "continuing violation" theory. Further, plaintiffs assert that under Lyons v. England, 307 F.3d 1092 (9th Cir. 2002), acts within the class period that do not fall within the current statute of limitations are admissible as "background information.

However, the Supreme Court has specifically rejected this precise theory, holding that "discrete acts that fall within the statutory time period *do not* make timely acts that fall outside the

10

time period." National R.R. Passenger, Corp. v. Morgan, 536 U.S. 2061, 2071 (2002) (emphasis added); see also RK Ventures, Inc. v. City of Seattle, 307, F.3d 1045, 1061 (9th Cir. 2002) (noting that Morgan expressly overruled previous Ninth Circuit precedent which held that "if a discriminatory act took place outside the limitations period, all the related acts—including the earlier acts—were actionable as part of a continuing violation.")

Additionally, with respect to the use of any time-barred acts as "background information," the Ninth Circuit in Lyons noted that past time-barred acts may be introduced to bolster later acts "so long as the [later] acts are independently discriminatory and charges addressing those acts are themselves timely filed." Lyons, 307 F.3d at 1108. Stated differently, plaintiff must allege and timely file an action for current discrimination in order to be able to draw from prior incidents of discrimination. Here, there are no specific allegations demonstrating that any discrimination occurred during the statute of limitations period. The only discrimination" specifically alleged during the appropriate period is the City's refusal to follow its Charter and several diversity studies. However, as discussed *infra*, the failure of the City to follow and implement diversity-promoting directives is not in itself discriminatory, although it may be evidence of discrimination. Thus, without any allegations of the occurrence of discrimination between July 2003 and July 2005, plaintiffs may not assert otherwise time-barred claims as "background information."

As defendants correctly argue, it would be a waste of judicial economy to allow what are otherwise stale claims to advance beyond the motion to dismiss stage. Accordingly, plaintiffs are directed to amend their complaint to allege with particularity the dates upon which each of the named plaintiffs entered into loan agreements with the City, and the dates upon which collection efforts against them began and ended. To the extent that any of the named plaintiffs entered into loans with the City and faced collection efforts prior to July 1, 2003, those claims are dismissed as untimely.

III.     Res Judicata and Collateral Estoppel

Defendants contend that any claims that are asserted by plaintiffs Brooks Hamilton and BH Enterprises are barred by claim and issue preclusion. Plaintiffs respond that these claims are not precluded because the other litigations in which they have been involved are similar concurrent claims. See Atlantic Coast Line Railroad Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 286 (1970). This argument is flawed as plaintiffs claims in federal and state court are not concurrent actions, but prior litigations in which a final judgment has been entered.

Further, plaintiffs argue that the doctrines of res judicata and collateral estoppel are only applicable to bar class actions if there has been a determination made with respect to certification of the class representatives. Plaintiffs erroneously cite to In re Bridgestone/Firestone Inc. Tires Products Liability Litig., 333 F.3d 763 (7th Cir. 2003) for this proposition. In Bridgestone, the Seventh Circuit held that class members other than the named representatives can be bound by an adverse decision if the named representatives were adequately represented. Id. at 768. This holding in no way supports plaintiffs' novel assertion that prior court rulings in a class action do not bind the class when the action is later certified. These prior litigations are not similar and concurrent claims and plaintiff's attempt to create an exception to the doctrine of res judicata for class actions is unavailing.

Contrary to plaintiffs' contentions, any claims by Brooks Hamilton and BH Enterprises that relate to the alleged discrimination by the City in the management and disbursement of loans are precluded because they are among the same parties and involve issues that have (or should have) already been litigated in a prior action. These two plaintiffs have initiated numerous actions in the state and federal courts of California involving essentially the same claims and arguments. On November 29, 2001, Brooks Hamilton filed a complaint making the same allegations in federal district court against the City, the City Council and a number of City Council members. Notably some of the same City Council members—Jane Brunner and Ignacio De La Fuente—are named defendants in the current action. See Req. Jud. Notice, Exh. A. In a motion for a preliminary injunction, plaintiff argued that he had experienced discrimination based on race in the

1   administration of the HUD loan program.  The court, in denying the motion for preliminary

2   injunction,[4] found that:

3          contrary to plaintiff's argument, the record shows no discrimination based on race by the City
           in administering the HUD loan program and shows plaintiff was not singled out and made to
4          post security . . . On this record, the evidence demonstrates that the City has implemented a
           general nondiscriminatory policy of seeking security when available.  Plaintiff has not raised
5          a substantial issue to the contrary.

6   Req. Jud. Notice, Exh. A at 2.  Further, the court found that in the execution of the deeds to secure the

7   loans, "it is clear on this record [that] . . . plaintiff was not a victim of racial discrimination."  Req.

8   Jud. Notice, Exh. A at 4.  Ultimately, as aforementioned, the district court dismissed the case for lack

9   of subject matter jurisdiction.  In August of 2002, however, Brooks Hamilton and BH Enterprises

10  filed a cross-complaint in the Alameda Superior Court asserting essentially the same claims.  These

11  race discrimination claims were dismissed without leave to amend after the court sustained the City's

12  demurrer.  The same claims were raised again in 2003 and 2004 in bankruptcy court and in a suit

13  against the Bankruptcy Trustee, respectively.

14          Clearly, the issue of whether plaintiffs were racially discriminated against by the City, in

15  violation of Title VI has been previously litigated and thus this claim is barred under the doctrine of

16  res judicata.  The dismissal of plaintiffs' 2002 claims involved a final judgment on the merits.  See

17  Derfner v. Cosgrove, No. C-0500261, 2005 WL 2671387,*4 (N.D. Cal. Oct. 19, 2005) (Illston, J.)

18  (quoting Palomar Mobilhome Park Ass'n v. City of San Marcos, 989 F.2d 362, 364 (1993)) (noting

19  that a grant of a demurrer by a California state court without leave to amend operates as a final

20  judgment on the merits);see also Goddard v. Security Title Ins. and Guarantee Co., 14 Cal. 2d 47, 52

21  (1939).

22          Plaintiffs' attempts to revive this claim through new causes of action is similarly unavailing as

23  these claims should have been raised in the prior actions.  Plaintiff Brooks Hamilton and BH

24  Enterprises' current claims under section 1983, section 1981, Title VI and their prayer for injunctive

25  relief all concern alleged racial discrimination in the management and disbursement of these City

26  loans.  This issue has already been fully and fairly litigated in multiple proceedings in federal and

27  state court, and thus plaintiffs may not re-assert these claims again in this forum.  Consequently,

28  defendants' motion to dismiss all of the claims asserted by Brooks Hamilton and BH Enterprises that

    involve the disbursement and management of City loans is granted.

UNITED STATES DISTRICT COURT
For the Northern District of California

13

1

2 IV.    42 U.S.C. section 1981

3        Defendants contend that plaintiffs have not pled race discrimination under section 1981 with
4 sufficient particularity.  Pursuant to section 1981 "all persons . . . shall have the same right in every
5 State and Territory to make and enforce contracts, to sue, be parties, give evidence, and the full and
6 equal benefit of all laws and proceedings for the security of persons and property as enjoyed by white
7 citizens . . . ."  42 U.S.C. § 1981(a).  In effect, section 1981 "prohibits racial discrimination in the
8 making and enforcement of contracts . . . ."  Cholla Ready Mix, Inc. v. Civish, BLM, 383 F.3d 969,
9 977 (9th Cir. 2004).

10       Defendants assert that plaintiffs' race discrimination allegations are overbroad.  Although a
11 plaintiff's allegations are deemed admitted for purposes of a motion to dismiss, these allegations may
12 not be mere legal conclusions, but must plead an "overt act which . . . gives substance to his claim of
13 discrimination and takes it from the realm of purely unsupported conclusionary [sic] allegations."
14 Sherman v. Yahahi, 549 F.2d 1287, 1290 (9th Cir. 1977).  See also Jones v. Comm' Dev. Agency of
15 Los Angeles, 733 F.2d 646 (9th Cir. 1984) (finding insufficient plaintiffs' allegations that he had been
16 deprived of the right to bid on government contracts without any allegations regarding how "race"
17 entered into the decision making process or any mention of contracts for which he applied and was
18 denied).[5]  In the instant action, plaintiffs make essentially two allegations.  First, defendants have
19 employed discriminatory measures in the management and disbursement of government loans,
20 contract awards and delivery of professional services.  Second, defendants have failed to implement
21 policies and directives aimed at increasing the representation of black business in these different City
22 programs.  With respect to the former, the court has already determined that plaintiffs have no
23 standing to assert those claims to the extent they relate to any contracts or professional services
24 entered into with the City.  In any event, plaintiffs have failed to sufficiently allege with sufficient
25 particularity any discrimination in the award of government contracts or in the provision of
26 professional services.  The only allegations in plaintiffs' complaint dealing with government contracts
27 or professional services are conclusory, pointing to no overt acts to substantiate the allegation.

28

UNITED STATES DISTRICT COURT
For the Northern District of California

14

1       The allegations concerning the failure to implement City policies and directives are similarly
2   insufficient.  These acts do not constitute discrimination on the basis of race but may be offered as
3   evidence of a discriminatory policy.  In Gonzales, the Ninth Circuit noted that "although the failure of
4   an employer to adopt or effectively to implement an affirmative action plan may be probative of
5   discriminatory intent, the lack of an affirmative action plan or the poor implementation of one does
6   not, by itself, prove class-wide discrimination."  Gonzales v. Police Dep't, 901 F.2d 758, 761 (9th
7   Cir. 1990) (quoting Chang v. University of Rhode Island, 606 F. Supp 1161, 1183 (D.R.I. 1985)).

8       However, contingent upon amendment of the complaint to aver personal acts of race
9   discrimination against each of the named plaintiffs, the court finds that plaintiffs have adequately pled
10  race discrimination in the disbursement of loans by the City.  Plaintiffs allege that they applied and
11  were approved for loans whose ultimate disbursal was delayed on account of race discrimination.
12  They allege that black businesses were required, while non-Black business were not required, to use
13  their personal security to collateralize these loans.  They also allege that in the case of black
14  businesses the City was more aggressive in pursuing loan collections than in the case of non-black
15  businesses.  See FAC ¶¶ 23–26.  These are factual allegations that provide support for plaintiffs'
16  claims of discrimination.

17      Contrary to defendants' assertions, which attempt to convert this motion to dismiss into one
18  for summary judgment, plaintiffs need not assert any additional facts, aside from those the court has
19  noted, to support the allegation of discrimination in the management and disbursement of the City
20  loans.  The relevant inquiry here is not whether plaintiffs have made a prima facie claim under any of
21  the statutes cited, but whether there are no grounds for relief if all allegations made are assumed to be
22  true.  Here, if all plaintiffs' factual assertions are true, it is not "beyond doubt that . . . plaintiff[s] can
23  prove no set of facts in support of . . . [their] claim which would entitle . . [them] to relief." Lewis, 87
24  F.3d at 1545.

25      Accordingly, defendants are not entitled to dismissal of plaintiffs' allegations of race
26  discrimination with respect to the disbursement of City loans.  Defendants are entitled to dismissal of
27  plaintiffs' race discrimination claims as they relate to the failure to adopt affirmative action policies or
28  to the extent they involve contracts with, or the provision of professional services from, the City.

UNITED STATES DISTRICT COURT
For the Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

V.      42 U.S.C. section 1983

In order to adequately plead a section 1983 violation, "plaintiffs must plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." WMX Tech. Inc. v. Miller, 80 F.3d 1315, 1318 (9th Cir. 1996) (quoting Gibson v. United States, 781 F.2d 1334, 1338 (9th Cir. 1986)).

For the same reasons as noted above, defendants are entitled to dismissal of plaintiffs' race discrimination claims under section 1983 to the extent they relate to City contracts or professional services and the failure to adopt affirmative action policies since absent a constitutional violation, there is no section 1983 liability. See, e.g., City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

Defendants assert that plaintiffs' allegations are insufficient to state a claim under section 1983 because they do not demonstrate a violation of plaintiffs' due process, equal protection or First Amendment rights. In their reply to plaintiffs' opposition, however, defendants appear to concede these arguments by making no mention of them, instead arguing that plaintiffs have failed to adequately allege municipal liability pursuant to Monell v. Department of Social Services, 436 U.S. 658, 694 (1978). In any event, the court reaches the merits of defendants' contentions below.

A.      Due Process

Defendants assert that plaintiffs may not assert a procedural nor a substantive due process claim because the allegations plaintiffs have made do not sufficiently allege an actionable deprivation of property or a liberty interest. It is clearly established that "[a] threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56 (9th Cir. 1994) (citing Board of Regents v. Roth, 408 U.S. 564, 569 (1972)). Courts "look to state law to define the dimensions of protected property interests." WMX, 80 F.3d at 1318 (quoting Roth, 408 U.S. at 577).

Defendants contend that plaintiffs' allegations that the City failed to adopt affirmative action programs are insufficient to state a claim since plaintiffs cannot demonstrate any entitlement to affirmative action. This, defendants assert, is particularly true given the fact that pursuant to Proposition 209, affirmative action has been declared unconstitutional in California. However, as

16

1   aforementioned, plaintiffs' due process allegations comprise more than the affirmative action claims;
2   they also include allegations of discrimination in the management of the City's loan program.

3   Defendants, citing to a Seventh Circuit decision, additionally assert that plaintiff corporations
4   cannot sustain a due process claim since such entities do not have liberty interests. However, as
5   plaintiffs counter, the Ninth Circuit has specifically held that "in light of the California statute
6   conferring property status to business goodwill, 'the goodwill of one's business is a property interest
7   entitled to protection; the owner cannot be deprived of it without due process.'" WMX, 80 F.3d at
8   1319 (citing Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989)). Plaintiffs allege
9   that due to defendants' policies, they have suffered damage to their business goodwill and their
10  reputations. FAC ¶¶ 38, 51. Thus, plaintiffs have adequately alleged a property interest for purposes
11  of a substantive and procedural due process claim.

12  "In order to prove a substantive due process claim, [a plaintiff] must plead that the
13  government's action was 'clearly arbitrary and unreasonable, having no substantial relation to the
14  public health, safety, morals, or general welfare.'" Lebbos v. Judges of Super. Ct., Santa Clara
15  County, 883 F.2d 810, 818 (9th Cir. 1989) (quoting Village of Euclid v. Ambler Realty Co., 272 U.S.
16  365, 395 (1926)); see also FDIC v. Henderson, 940 F.2d 465 (9th Cir. 1991). In averring that the
17  defendants' discriminated against plaintiffs in loan management and distribution—actions which were
18  allegedly "intentional, malicious, arbitrary and capricious, and without substantial justification"—
19  plaintiffs have adequately plead a substantive due process claim. See FAC ¶ 50. Defendants' motion
20  to dismiss this claim is denied, contingent upon an amendment by plaintiffs to allege the specific acts
21  of discrimination suffered by each named plaintiff.

22  Plaintiffs have not, however, adequately pled any violation of procedural due process.
23  Plaintiffs make no argument in response to defendants' motion to dismiss this claim. "A procedural
24  due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or
25  property interest, and (2) a denial of adequate procedural protections." McQuillion v. Duncan,
26  306 F.3d 895, 900 (9th Cir. 2002) (quoting Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.,
27  149 F.3d 971, 982 (9th Cir. 1998)). Although plaintiffs assert a property interest, they make no
28  allegations that they were denied any procedural protections. Defendants' motion to dismiss this
    claim is thus granted.

17

1

B.    Equal Protection

2    The Supreme Court has specifically held that "[t]he purpose of the equal protection clause of
3 the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional
4 and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper
5 execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564
6 (2000) (quoting Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923)). The Ninth
7 Circuit has held that section 1983 claims which are "based on Equal Protection violations *must* plead
8 *intentional* unlawful discrimination or allege facts that are at least susceptible of an inference of
9 discriminatory intent." Monteiro v. Tempe Union High School Dist., 158 F.3d 1022, 1026 (9th Cir.
10 1998) (citing De La Cruz v. Tormey, 582 F.2d 45, 58 (9th Cir. 1978), cert. denied, 441 U.S. 965
11 (1979)) (emphasis added).  In the present action, as noted above, plaintiffs have alleged that
12 defendants' discriminatory actions were "*intentional*, malicious, arbitrary and capricious, and without
13 substantial justification." FAC ¶ 50 (emphasis added). Plaintiffs also allege that defendants, "by their
14 actions and omissions, have historically created and *intentionally perpetuated and maintained*
15 [p]olicies which effectively exclude and operate to the detriment of plaintiffs." FAC ¶ 1 (emphasis
16 added). These allegations are sufficient to withstand a motion to dismiss. Defendants' assertions that
17 plaintiffs must prove intent is unsubstantiated. As discussed above, the motion before the court is one
18 to dismiss the complaint and not one for summary judgment. Defendants' motion to dismiss this
19 claim is granted with leave to amend to allege the specific acts of discrimination suffered by each
20 named plaintiff.

21

22

C.    First Amendment

23    Defendants contend that plaintiffs' First Amendment claim should be dismissed because the
24 named plaintiffs have not adequately alleged that they have spoken out publicly or privately regarding
25 the City's unlawful policies and then been denied opportunities as a result. In order for a plaintiff to
26 prevail in an action alleging retaliation in violation of the First Amendment, plaintiff must plead and
27 ultimately prove that his speech was constitutionally protected and that the speech was the substantial
28 or motivating factor for the retaliation. Mt. Healthy City School District Board of Educ. v. Doyle,
429 U.S. 274, 287 (1977). Plaintiffs allege that "during the class period, [d]efendants have retaliated

UNITED STATES DISTRICT COURT
For the Northern District of California

18

1   against [p]laintiffs who speak out in public and private forums about the Defendants' discriminatory
2   and unlawful . . . lending and grant award [p]olicies and practices by . . . withholding loans and grant
3   awards, thereby causing [p]laintiffs and class member to lose contract dollars, revenue and profits,
4   and to go out of business." FAC ¶ 36. Defendants assert that these allegations are speculative and
5   insufficient to place them on notice.

6        As discussed *supra*, these allegations are insufficient to place defendants on notice of the
7   claims against them since plaintiffs have asserted no facts in their complaint or in the papers
8   demonstrating that any of the named plaintiffs' First Amendment rights were violated. Defendants'
9   motion to dismiss plaintiffs' First Amendment claim is granted with leave to amend to allege the
10  specific speech in which each plaintiff was engaged and the specific retaliatory acts that were inflicted
11  as a result along with facts supporting the nexus between the speech and the retaliation.

12

13              D.    Municipality Liability

14       Defendants assert that plaintiffs' section 1983 claims should be dismissed because plaintiff is
15  unable to demonstrate that defendants had a policy which operated in deliberate indifference to
16  plaintiffs' constitutional rights. In order for a plaintiff to maintain a section 1983 claim, the plaintiff
17  must not only demonstrate that they possessed a constitutional right of which he was deprived, but
18  they must demonstrate that (1) "the municipality had a policy; (2) this policy amount[ed] to deliberate
19  indifference to the plaintiff's constitutional right; and (3) that the policy [was] the moving force
20  behind the constitutional violation." Oviatt v. Pierce, 954 F.2d 1470, 1474 (9th Cir. 1992). However,
21  the Ninth Circuit has observed that a determination into whether or not a custom or policy exists and
22  whether such custom was the moving force behind a constitutional violation is inappropriate for a
23  Rule 12(b)(6) motion but better suited for summary judgment or a jury. Christie v. Iopa, 176 F.3d
24  1231, 1235 (9th. Cir. 1999)

25       Here, plaintiffs have adequately pled the existence of a policy or custom. These policies are
26  defined as the "lending and grant award practices, policies, and customs" of the City of Oakland—for
27  example the alleged policy of requiring black business persons or black-owned business to post
28  security using personal assets. These policies, plaintiffs assert, are discriminatory and have served to
    "exclude and operate to the detriment of plaintiffs." FAC ¶ 1. Specifically, plaintiffs allege that

UNITED STATES DISTRICT COURT
For the Northern District of California

1  "defendants have acted in *"deliberate and reckless indifference* to [p]laintiffs' constitutional rights. . .
2  [and] have tolerated and condoned the unconstitutional, discriminatory and unlawful actions of its
3  City council-persons, officials, staff and employees and have *failed to train, supervise, control and*
4  *discipline* these person who have deprived [p]laintiffs of their constitutional and statutory rights as
5  part of its Policy." FAC ¶ 48 (emphasis added).

6         The Supreme Court has held that to the extent that a municipality's "failure to train its
7  employees . . . evidences a 'deliberate indifferent' to the rights of its inhabitants . . . such a
8  shortcoming [can] be properly thought of as a city 'policy or custom' that is actionable under [section]
9  1983. City of Canton v. Harris, 489 U.S. 378, 389 (1989). Plaintiff has not only alleged a general
10  policy of discrimination but also a failure by the City of Oakland to train its employees.  Of course,
11  plaintiffs may only proceed on their claims for municipal liability if they adequately allege and
12  ultimately succeed on their underlying constitutional claims. Accordingly, defendants' motion to
13  dismiss plaintiffs' allegations that the City of Oakland employed a discriminatory policy in violation
14  of section 1983 is denied.

15

16  VI.   Title VI

17         Title VI prohibits discrimination by any program that receives federal assistance. The only
18  challenge made by defendants to plaintiffs claims to a Title VI violation is that plaintiffs have failed
19  to adequately allege intentional discrimination in the failure to follow adopted policies and directives
20  with respect to diversity in the City programs. The Ninth Circuit has specifically held, however, that
21  under Title VI all that is required is for the complaint to "allege that the defendant is engaging in
22  discrimination . . . [A]lthough a showing of intent is necessary at trial," it is not necessary at the
23  pleading stage. Monteiro, 158 F.3d at 1026 (citing Fobbs v. Holy Cross Health Sys., 29 F.3d 1439,
24  1447 (9th Cir. 1994), cert. denied, 513 U.S. 1127 (1995)). Moreover, and as discussed *supra*,
25  plaintiffs' allegations comprise more than a failure on the part of the City to adopt affirmative action
26  policies. Plaintiffs allege that through discriminatory loan management and disbursal policies, the
27  defendants have "excluded plaintiffs from participating equally with non-Black businesses and
28  business persons in . . . loans and grant award programs and activities . . . ." FAC ¶ 55. Defendants'
    motion to dismiss this claim is denied.

20

UNITED STATES DISTRICT COURT
For the Northern District of California

1   VII.   Leave to Amend

2          The Federal Rules of Civil Procedure provide that leave to amend be "freely given when
3   justice so requires." Fed. R. Civ. Pro. 15(a). The Ninth Circuit has construed this broadly, requiring
4   that leave to amend be granted with "extraordinary liberality." Morongo Band of Mission Indians v.
5   Rose, 893 F.2d 1074, 1079 (9th Cir. 1990). In determining whether it should grant leave to amend a
6   complaint, the court must consider (1) the plaintiff's bad faith; (2) undue delay; (3) prejudice to the
7   defendant; (4) futility of amendment; and (5) whether the plaintiff has previously amended his or her
8   pleadings. Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir. 2004) (citing Bonin v. Calderon, 59 F.3d
9   815, 845 (9th Cir. 1995)), reh'g and reh'g en banc denied, 375 F.3d 810 (9th Cir. 2004), cert. denied,
10  543 U.S. 1188 (2005). Futility alone can justify the denial of a motion to amend. Bonin, 59 F.3d at
11  845. Plaintiffs have only amended their pleadings once previously and there is no indication that
12  defendants will suffer any prejudice or undue delay from a second amendment. The court grants
13  plaintiffs leave to amend their complaint consistent with the provisions of this order.

14

15  VIII.   Summary

16         The following claims are dismissed without leave to amend: all claims by plaintiffs Brooks-
17  Hamilton and BH Enterprises are barred by claim and issue preclusion; all claims by plaintiff Dennis
18  Jeffrey's are dismissed as time-barred; plaintiffs' claims, as they relate to discrimination in the award
19  of government contracts and/or professional services or as they relate to City's alleged failure to adopt
20  affirmative action policies are dismissed for lack of standing; plaintiffs' procedural due process claim
21  is dismissed.

22         The following claims are dismissed with leave to amend: claim one alleging a violation of
23  section 1981; claim two alleging a violation of section 1983, claim three alleging a violation of Title
24  VI.

25

26

27

28

21

1 | CONCLUSION

2      For the reasons stated above, defendants' motion to dismiss is GRANTED in part and
3 DENIED in part. To the extent plaintiffs can amend the dismissed claims consistent with this order,
4 plaintiffs are given leave to amend within thirty (30) days of the date of this order. Defendants shall
5 answer or otherwise respond within thirty (30) days of the filing of the amended complaint. Plaintiffs
6 are cautioned that they should plead their claims with clarity and precision and be selective in the
7 claims asserted. Plaintiffs should focus on the causes of action for which they can actually assert facts
8 that will support the relief they seek. One or two well-pled claims are worth more than a scattershot
9 of a large number of claims.

10

11      IT IS SO ORDERED.

12 Dated: June 30, 2006

13                                      MARILYN HALL PATEL
                                       District Judge

14                                      United States District Court
                                     Northern District of California

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
For the Northern District of California

22

**ENDNOTES**

1.  Unless otherwise noted, the facts set forth below are drawn from the allegations in plaintiffs' first amended complaint (the "complaint" or "FAC").

2.  Plaintiffs object to the court taking judicial notice of a number of defendants' exhibits submitted in their Request for Judicial Notice. When ruling on a motion to dismiss, the court must disregard facts not alleged on the face of the complaint (or attached to the complaint) or facts which are not the proper subject of judicial notice. See, e.g., Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir.), cert. denied, 484 U.S. 944 (1987). Ninth Circuit case law clearly states that courts should distinguish between "taking judicial notice of the truth of some extrajudicial fact recited in a court record and the use of those facts for some purpose that does not depend on the truth of the facts recited." Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003). The concern is that the district court should not use additional facts as truth and in so doing convert a motion to dismiss into a motion for summary judgment. Plaintiffs are correct that given Ninth Circuit authority, this court is barred from (1) using the recitations from the different court records with respect to the dates upon which the plaintiffs contracted with the City and/or defaulted on their loans [Exhs. P, Q ]and (2) three of defendant's submissions [Exhibit M-O] as these are not documents of "public record" but are the actual contract documents which are not "capable of accurate and ready determination. . ." Fed. R. Evid. 201(b).

3.  It is of note that despite what appears to be an attempt by plaintiffs, in their opposition brief, to argue the elements of a class certification motion, the court declines to reach this issue as it is not currently before the court.

4.  The preliminary injunction was denied as originally filed. However, the court allowed the plaintiff to base his motion on a new ground that was raised during oral arguments. Defendant was allowed to halt the trustee sale of his property if he posted $3,000 in bond.

5.  The only paragraph (with the exception of a paragraph on claimed damages) mentioning race in plaintiff's complaint read as follows:

> Defendants have deprived JONES of the full and equal enjoyment of goods, services, facilities, privileges, advantages and accommodations [sic] and the right to bid on government contracts as are enjoyed by white citizens. On the basis of race, defendants will continued to deny JONES and other blacks the right to purchase performance bonds and to bid on governmental projects.

Jones, 733 F.2d at 650.

23