1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES  DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAMUMBA CORPORATION, GEOFFREY
PETE, DENNIS JEFFREY dba THE PRINT
SHOP, 3J's AND BH ENTERPRISES, a
partnership, RALBERT BROOKS
HAMILTON, on behalf of themselves and all
others similarly situated,

                Plaintiffs,

    v.

CITY OF OAKLAND, JANE BRUNNER,
member of the City Council in her official
capacity, HENRY CHANG, member of the
City Council in his official capacity,
IGNACIO DE LA FUENTE, member of the
City Council in his official capacity, NANCY
NADEL, member of the City Council in her
official capacity, JEAN QUAN, member of the
City Council in her official capacity, LARRY
REID,  member of the City Council in his
official capacity,

                Defendants.
_____/

No. C 05-2712 MHP

**MEMORANDUM & ORDER**
**Re: Defendants' Motion to Strike**

       On July 1, 2005 plaintiffs Geoffrey Pete ("Pete"), the Lamumba Corporation, Dennis Jeffrey

("Jeffrey") dba The Print Shop, Ralbert Brooks Hamilton ("Hamilton"), and 3J's and BH

Enterprises, brought this class action against the city of Oakland ("the City") and several city

council members (together,"defendants"), alleging discrimination in the administration of loan and

contracting services and seeking monetary damages and injunctive relief pursuant to the Civil Rights

Act of 1866, 42 U.S.C. sections 1981 and 1983, and Title VI of the Civil Rights Act of 1964, 28

U.S.C. section 2000d.  Now before the court is defendants' motion to strike plaintiffs' second

1  amended complaint ("SAC").  Having considered the parties' arguments and for the reasons stated

2  below, the court enters the following memorandum and order.

3

4  BACKGROUND[1]

5         Plaintiffs are all self-described black businessmen or black-owned businesses based in

6  Oakland California.  Plaintiff Pete is the Chief Executive Officer of plaintiff Lamumba Corporation.

7  Plaintiff Jeffrey runs his own business, The Print Shop.  Plaintiff 3J's and BH Enterprises ("BH

8  Enterprises") is a partnership and one of its partners is plaintiff Hamilton.  Defendants approved and

9  promised loans and grant funds to plaintiffs pursuant to the City's loan programs.

10        The SAC contains three sets of allegations against defendants.  First, plaintiffs claim that

11  during the class period, which runs from July 2003 to the present, defendants have forgiven loans, or

12  provided favorable loan terms, for non-Black business and business persons while failing to extend

13  such loan forgiveness and favorable terms to plaintiffs.  Second, plaintiffs allege that defendants

14  have vigorously pursued loan collection actions against plaintiffs in default on city loans, including

15  seizing their personal assets, while not pursuing such tactics against similarly situated non-Black

16  business and business persons.  The SAC includes numerous specific examples of these alleged

17  practices dating from 1997 to late 2005, and general allegations that these practices have continued

18  to the present.

19        In addition to these discriminatory practices, plaintiffs allege that defendants have retaliated

20  against them during the class period due to plaintiffs' public comments about defendants'

21  discriminatory and unlawful lending and contracting practices, including this lawsuit.  Specifically,

22  plaintiffs allege that defendants provided false information regarding Hamilton to the U.S.

23  Attorney's Office and the press, leading to a baseless criminal prosecution and public

24  embarrassment.  Plaintiffs further allege that defendants removed Pete from an influential City

25  commission following his public statements.  Finally, plaintiffs claim that Jeffrey was accosted by

26  City police officers after he publicly commented on the City's discriminatory practices.  Plaintiffs

27  allege that each of these actions was in retaliation for the respective individuals' protected speech

28  criticizing defendants' lending practices.

1  The SAC asserts causes of action based on 42 U.S.C. section 1981, 42 U.S.C section 1983,

2  and 42 U.S.C. section 2000d (Title VI).  Each of these causes of action was previously asserted in

3  plaintiffs' first amended complaint (FAC).  On September 29, 2005 defendants moved to dismiss the

4  FAC, asserting that (1) plaintiffs lacked standing, (2) their claims are barred under the applicable

5  statute of limitations, (3) some of the named plaintiffs' claims are barred by res judicata and (4)

6  plaintiffs fail to state a claim under any of the statutory grounds alleged.  In an order issued on July

7  3, 2006, this court granted in part and denied in part defendants' motion.  This court dismissed all

8  claims by Hamilton and BH Enterprises without leave to amend based on claim and issue

9  preclusion.[2]   Memorandum and Order re: Defendants' Motion to Dismiss, Docket No. 34 ("Order")

10 at 13:22–29, 21:16–17.  The court further held that Jeffrey's claims were dismissed as time-barred.

11 Id. at 21:17–18.  Regarding the time-barred claims, the court directed plaintiffs "to amend their

12 complaint to allege with particularity the dates upon which each of the named plaintiffs entered into

13 loan agreements with the City, and the dates upon which collection efforts against them began and

14 ended." Id. at 11:20–22.  The court further stated that "[t]o the extent that any of the named

15 plaintiffs entered into loans with the City and faced collection effort prior to July 1, 2003, those

16 claims are dismissed as untimely." Id. at 11:22–23.  Implicit in this directive is the conclusion that,

17 if plaintiffs (other than Hamilton and BH Enterprises) allege collection efforts on or after July 1,

18 2003, claims arising from those collection efforts would not be time-barred.

19 The court's order directed plaintiffs to file an amended complaint within thirty days of the

20 order. Id. at 22:3–4.  Plaintiffs filed the SAC on August 4, 2006, thirty-two days after the order was

21 issued.  Defendants filed a Request for Dismissal pursuant to Federal Rule of Civil Procedure 41(b)

22 on August 7, 2006, based on plaintiffs' failure to file an amended complaint.[3]  Defendants later filed

23 a Motion to Strike pursuant to Federal Rule of Civil Procedure 12(f) on September 5, 2003.

25 LEGAL STANDARD

26 I.      Motion to Strike

27 Under Rule 12(f), a court may strike a pleading—or any portion thereof—that is "redundant,

28 impertinent, or scandalous."  Rule 12(f) motions are generally disfavored, and the remedy of striking

3

a pleading is to be used when necessary to discourage parties from raising allegations completely unrelated to the relevant claims and when the interests of justice so require. See Augustus v. Bd. of Pub. Instruction, 306 F.2d 862, 868 (5th Cir.1962); see also Federal Deposit Ins. Corp. v. Niblo, 821 F. Supp. 441, 449 (N.D. Tex. 1993) (noting that Rule 12(f) motions will be granted when necessary to discourage parties from filing "dilatory" pleadings and papers).

DISCUSSION

Defendants move to strike plaintiffs' second amended complaint on two grounds. First, defendants assert that plaintiffs' complaint should be stricken because it was filed two days after the deadline imposed by this court's previous order. Second, defendants claim that the complaint should be stricken because plaintiffs have alleged causes of action that were previously dismissed without leave to amend.

I.      Timeliness

As a preliminary matter, plaintiffs claim that defendants' motion to strike should be denied because it was not filed in compliance with the Federal Rules of Civil Procedure or the Local Rules. Plaintiffs' Federal Rules argument asserts that defendants waived relief under Rule 12(f) by failing to bring the motion before responding to the second amended complaint or within 20 days of the filing of the complaint, as required by Rule 12(f). This argument relies on the characterization of defendants' Request for Dismissal as responsive to plaintiffs' SAC. Although the Request was filed three days after the SAC was filed, the wording of the Request indicates that it is explicitly based on plaintiffs' failure to file a complaint within the period prescribed by this court's order, rather than the complaint itself. Accordingly, defendants' Request for Dismissal was not a responsive pleading, and defendants did not waive Rule 12(f) relief by filing their Request.

Turning to plaintiffs' Local Rules argument, plaintiffs assert that defendants' Motion to Strike did not comply Local Rule 7-2, which states that "all motions must be filed, served and noticed in writing on the motion calendar of the assigned Judge for hearing not less than 35 days after service of the motion." Defendants' original Notice of Motion to Strike was filed on

4

September 5, 2006, calendaring the motion for October 2, 2006.  After plaintiffs filed a Motion to Strike Defendants' Motion to Strike based on non-compliance with the Local Rules, defendants re-noticed their Motion to Strike for October 16, 2006.  Plaintiffs claim that defendants' Motion to Strike should be denied based on defendants' failure to properly notice the motion.

Defendants, meanwhile, assert that plaintiffs' second amended complaint should be stricken because it was filed two days past the court's 30-day deadline.  As counsel for both sides have made errors related to deadlines,[4] the court rejects the timeliness arguments brought by both sides.  The court will consider defendants' improperly noticed Motion to Strike.  However, the court will not strike plaintiffs' second amended complaint based on the fact that it was filed two days late.

II.     Plaintiffs' Renewed Claims

In addition to their timeliness claim, defendants assert that plaintiffs' complaint should be stricken because it exceeded the scope of the leave to amend granted by this court.  Defendants assert that the renewed claims by Hamilton and Jeffrey are improper because their claims were dismissed without leave to amend, and that Pete's claims are barred by the statute of limitations.

Exceeding the scope of a court's leave to amend is not necessarily sufficient grounds for striking a pleading or portions thereof.  See, e.g., Sapiro v. Encompass Ins., 221 F.R.D. 513, 518 (N.D. Cal. 2004) (Patel, C.J.) (declining to strike complaint that had been amended without leave from the court); U.S. v. $159,880.00 in U.S. Currency, More or Less, 387 F. Supp. 2d 1000, 1009 (S.D. Iowa 2005) (declining to strike amended answer that differed substantially from a proposed amended answer because defendants were not prejudiced); Samuel v. Rose's Stores, Inc., 907 F. Supp. 159, 162 (E.D. Va. 1995) (declining to strike amended complaint where no new causes of action were alleged and defendant did not argue prejudice).  However, claims in an amended complaint may be stricken if they are "wholly specious" or cause prejudice to the defendants.  Sapiro, 221 F.R.D. at 518; $159,880.00 in U.S. Currency, 387 F. Supp. 2d at 1009; Samuel, 907 F. Supp. at 169.  Accordingly, if plaintiffs have re-asserted claims that were dismissed with prejudice or failed to abide by the court's instructions to salvage their time-barred causes of action, these defective claims are specious and will be stricken.

Regarding Hamilton and BH Enterprises, this court previously held that all claims asserted by these plaintiffs involving the disbursement and management of City loans were barred by claim and issue preclusion. Order at 13:22–29. Plaintiffs' SAC nonetheless asserts a claim on behalf of Hamilton regarding the City's alleged refusal to accommodate Hamilton's demand for a payoff letter, and its pursuit of the foreclosure of Hamilton's personal residence. SAC ¶ 37. This claim is specious and therefore Paragraph 37 of the SAC is stricken.

Regarding Jeffrey and Pete, this court granted plaintiffs leave to amend their complaint to the extent that they could allege that they entered into loans with the City and faced collection efforts on or after July 1, 2003.[5] Order at 11:18 –23. In granting this leave, the court directed plaintiffs to set forth "the dates upon which collection efforts against them began and ended." Id. (emphasis added). Accordingly, plaintiffs have acted within the scope of this court's order if the SAC describes collection efforts that took place on or after July 1, 2003.

Plaintiffs assert numerous purported collection efforts that occurred on or after July 1, 2003. Plaintiffs claim that the City required Pete to assign rents from all of his tenants from July 2003 to June 2004 in addition to making loan payments, as well as deposit three months' worth of loan payments in advance. SAC ¶ 25. Plaintiffs further allege that the City failed to forgive Pete's loan after Pete requested that the City forgive the balance of the loan by letter dated September 24, 2003. Id. ¶ 27. In addition, plaintiffs claim that the City "forced Pete to refinance his loan to avoid collection action" in June 2004. Id. ¶ 35. Finally, plaintiffs allege that, on July 22, 2004, the City forced Jeffrey to sell his personal residence to avoid the City's foreclosure action. Id. ¶ 36.

Defendants assert that none of these occurrences constitute discrete acts of discrimination, and that the term "collection efforts" in this court's prior order should be limited to formal collection actions initiated by the City in 2002. According to defendants, the fact that there were actions in furtherance of the 2002 collection efforts extending into the limitations period does not render plaintiffs' claims timely.

It is clear that the events cited by plaintiffs occurring within the limitations period were tied to the collection actions initiated in 2002. The issue is whether these events were "inevitable consequences" of the initiation of the collection actions, or decisions resulting from "independent

6

consideration."  The Ninth Circuit has held that events occurring within a limitations period that are the inevitable consequences of an event occurring outside the limitations period are not actionable, while decisions resulting from independent consideration are actionable, despite being related to an action outside the limitations period.  See RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1058, 1061 (9th Cir. 2002).  The court also held that, in circumstances such as these, an event that is not an act of the City but rather an effect of an earlier decision is not itself actionable.  Id. at 1061.

In RK Ventures, the defendant City decided to institute formal abatement hearings prior to the limitations period.  Id. at 1058.  The court held that the government processes arising from that decision—the hearings themselves and the prosecution of the abatement action— were "inevitable consequences" of the decision to initiate the proceedings and therefore were not actionable despite occurring within the limitations period.  Id.  The City's withdrawal of a settlement offer, however, was the result of independent consideration and therefore actionable.  Id. at 1061.  The plaintiffs' act of selling the property that was the subject of the abatement proceeding was not an act of the City and therefore could not support a cause of action.  Id.

Here, plaintiffs characterize the conduct occurring within the limitations period as strategic decisions on the part of the City directed toward securing payment for plaintiffs' loans.  The specific acts asserted by plaintiffs—forcing plaintiffs to assign rents, pay in advance, sell property, and refinance their loans, and refusing to accommodate plaintiffs' requests for new loan terms—were not the inevitable results of the 2002 collection actions.  Rather, they were independently considered decisions in furtherance of obtaining funds from plaintiffs.  Construing these allegations in this manner, plaintiffs' claims are not wholly specious and therefore will not be stricken.

The SAC also describes numerous incidents occurring outside the limitations period.  Although these facts cannot independently support timely causes of action, their inclusion in the SAC is not improper given the presence of timely discrete acts of discrimination.  "In assessing whether acts occurring within the limitations period are unconstitutional, [courts] may look to pre-limitations period events as *evidence* of an unconstitutional motive."  Id. at 1062 (emphasis added).  See also National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) (holding that prior acts can be used as "background evidence in support of a timely claim").  Accordingly, plaintiffs'

7

allegations regarding events occurring prior to July 1, 2003 will not be stricken, but will be considered for evidentiary purposes only.

Accordingly, the factual allegations regarding Pete and Jeffrey are not specious and should not be stricken.

CONCLUSION

For the reasons stated above, defendants' motion to strike is GRANTED in part and DENIED in part.  Paragraph 37 of the SAC is hereby stricken.


IT IS SO ORDERED.

Dated:        Oct. 30, 2006

MARILYN HALL PATEL
District Judge
United States District Court
Northern District of California

8

**ENDNOTES**

1.  Unless otherwise noted, the facts set forth below are drawn from the allegations in plaintiffs' SAC.

2.  The extensive prior litigation against defendants involving Hamilton and BH Enterprises is discussed in this court's prior order at 3:11–4:26.  The full discussion need not be reproduced here. For the purposes of this order it is sufficient to note that these prior actions supported dismissal based on claim and issue preclusion.

3.  Defendants' Request for Dismissal has since been terminated (see Docket Entry 36).

4.  Plaintiffs claim that the late filing of their complaint was due to a good faith mistake on the part of their counsel.  Apparently, plaintiffs' counsel did not count the July 4th holiday as part of the 30-day period imposed by the court, and also thought that there were thirty days in July.  Defendants claim that the defect in noticing their Motion to Strike was completely cured by re-noticing the Motion following plaintiff's objection.

5.  Language elsewhere in the opinion suggests that Jeffrey's time-barred claims were dismissed without leave to amend.  Order at 21:16–18.  However, the section addressing defendants' statute of limitations argument explicitly mentions Hamilton and Jeffrey.  Id. at 9:19.  The court explicitly declined to reach the issue of whether Hamilton's claims were time-barred because those claims were barred by res judicata.  Id. at 10:16–18.  Accordingly, the court's directive allowing plaintiffs to cure their timeliness defects applied to Jeffrey.

9