UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMUMBA CORPORATION, GEOFFREY PETE, DENNIS JEFFERY dba THE PRINT SHOP, 3J'S AND BH ENTERPRISES, a partnership, RALBERT BROOKS HAMILTON, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND, JANE BRUNNER, member of the City Council in her official capacity, HENRY CHANG, member of the City Council in his official capacity, NANCY NADEL, member of the City Council in her official capacity, JEAN QUAN, member of the City Council in her official capacity, LARRY REID, member of the City Council in his official capacity,<br><br>Defendants.<br>_____ / | No. C. 05-2712 MHP<br><br>**MEMORANDUM & ORDER**<br>**Re: Plaintiffs' Motion to Certify a Class Action** |

On July 1, 2005 Geoffrey Pete ("Pete"), the Lamumba Corporation ("Lamumba"), Dennis Jeffrey ("Jeffrey") dba The Print Shop, Ralbert Brooks Hamilton ("Hamilton"), and 3J's and BH Enterprises (collectively "plaintiffs"), brought this class action against the city of Oakland ("the City") and several city council members (collectively "defendants"), alleging discrimination in the administration of loan and contracting services and seeking monetary damages and injunctive relief pursuant to the Civil Rights Act of 1866, 42 U.S.C. sections 1981 and 1983, and Title VI of the Civil Rights Act of 1964, 28 U.S.C. section 2000d.  Now before the court is plaintiff's motion for class

certification pursuant to Federal Rule of Civil Procedure 23. After considering the parties' arguments and submissions and for the reasons set forth below, the court rules as follows.

BACKGROUND[1]

Plaintiffs are all self-described Black businessmen or Black-owned businesses based in Oakland, California. Plaintiffs allege that during the class period, which runs from 2003 to the present, defendants approved and promised loans and grant funds to plaintiffs pursuant to the City's loan programs. However, the disbursements were delayed and only a portion of the approved funds were subsequently paid out to these Black businesses and professionals. Plaintiffs relied on the promised loan disbursements and, as a result, suffered business and personal financial losses. Additionally, plaintiffs allege that defendants have required Black businesses and business persons who qualify for these loans to use their personal assets to collateralize the loans while not requiring the same of non-Black businesses or business persons. Defendants, according to the allegations, have also provided loan terms which are more favorable to non-Black businesses and have been more aggressive in their efforts to collect loans that have been defaulted by Black businesses and business persons.

Plaintiffs allege that during the class period the City was required, pursuant to the portion of its charter relating to bids and awards (the "Charter"), to conduct a race and gender disparity analysis and to remedy any discrimination that was discovered in the study. During the same period, plaintiffs assert, defendants have disregarded the guidelines and procedures outlined in their own internal policies (the "Hire Oakland and Oakland Equity Policies"), which are intended to devise guidelines and implement procedures aimed at preventing discriminatory policies by defendants. In 1996, the City commissioned its own study (the "Disparity Study") which found evidence of discrimination against Black businesses in contract awards and financial assistance from the City. The results of this study were valid until 2006. Further, in 2005, a group concerned with the underutilization of Black businesses by the City (the "Unity Group") found that as a result of unwillingness on the part of the City to implement policies and procedures to curb discrimination, significant disparities persisted. Plaintiffs allege that the City has failed to conduct the Charter

disparity analysis and refused to adopt the recommendations of the Disparity Study, the Unity Group, or its own Hire Oakland and Oakland Equity Policies. As a result, discriminatory policies have not been remedied, depriving plaintiffs of contracting, lending, and grant award opportunities.

Plaintiffs have brought this action, representing a class of Black businesses and professionals who have been aggrieved by the City's discriminatory purchasing, professional/personal services, construction contracting, lending and grant award practices, policies, and customs. Additionally, plaintiffs allege as a part of their 42 U.S.C. section 1983 claim that the City has violated their First Amendment free speech rights by retaliating against them for speaking out against the City regarding its allegedly discriminatory practices.

On August 20, 2007 plaintiffs filed the current motion under Federal Rule of Civil Procedure 23 requesting class certification. Additionally, plaintiffs request that plaintiffs' counsel, Dorothy Guillory, be appointed class counsel and that the court authorize notice to the class of the pending action and of the class members' right to opt-out under Federal Rule of Civil Procedure 23(d)(2).

LEGAL STANDARD

I.     Motion for Class Certification

A party seeking to certify a class must satisfy the four prerequisites enumerated in Rule 23(a), as well as at least one of the requirements of Rule 23(b). Fed. R. Civ. P. 23. Under Rule 23(a), the party seeking class certification must establish: (1) that the class is so large that joinder of all members is impracticable (i.e., numerosity); (2) that there are one or more questions of law or fact common to the class (i.e., commonality); (3) that the named parties' claims are typical of the class (i.e., typicality); and (4) that the class representatives will fairly and adequately protect the interests of other members of the class (i.e., adequacy of representation). Fed. R. Civ. P. 23(a). In addition to satisfying these prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2) or (3). See Fed. R. Civ. P. 23(b); Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614 (1997).

The party seeking class certification bears the burden of establishing that the requirements of Rules 23(a) and 23(b) have been met. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180,

1188 (9th Cir. 2001), amended by 273 F.3d 1266 (9th Cir. 2001); Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).  When adjudicating a motion for class certification, the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied.  See Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975).  The merits of the class members' substantive claims are generally irrelevant to this inquiry.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177–78 (1974); Moore v. Hughes Helicopters, Inc., 708 F.2d 475, 480 (9th Cir. 1983).  However, courts are "at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case," and a court may only certify a class after a "rigorous analysis" as to whether the requirements have been satisfied.  Hanon, 976 F.2d at 509 (internal quotations omitted).  For actions involving subclasses, each subclass must also individually meet all of the requirements of Rule 23(a).  See Fed. R. Civ. P. 23(c)(4)(b).

DISCUSSION

I.      Rule 23 Class Certification

Plaintiffs seek to certify the following two classes:

> 1. businesses-including, but not limited to, sole proprietorships, associations, partnerships, limited partnerships, corporations-owned or operated by Black persons, that were, from July 1, 2003, to the present, obliged to repay the City of Oakland, including the Oakland Redevelopment Agency, its projects and subsidiaries (hereafter "City"), loans in the range of $1.00 (one dollar) to $ 15,000,000 (fifteen million dollars), and all such Black businesses that were subjected to loan collection procedures and actions by the City from July 1, 2003, to the present.
>
> 2. Black persons involved in Black businesses . . . who were subjected to adverse actions by the City during the period July 1, 2003 to the present, after they complained about or objected to (in public forums) what they perceived as discriminatory loan management and collection practices by the City.

   A.      Rule 23(a) Requirements

As a threshold matter, the party seeking class certification must demonstrate that an ascertainable class exists.

4

### 1. Certainty

Apart from the explicit requirements of Rule 23(a), "[a]n implied prerequisite to certification is that the class must be sufficiently definite." Whiteway v. FedEx Kinko's Office & Print Servs., Inc., No. C 05-2320 SBA, 2006 WL 2642528, at *3 (N.D. Cal. Sep. 14, 2006) (Armstrong, J.). "A class definition should be precise, objective, and presently ascertainable," though "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotations omitted).

Though not addressed by plaintiffs in their motion for class certification, the proposed class definition includes more than one subclass. The court has the discretion to create separate subclasses when necessary. Fed. R. Civ. P. 23(c)(4)(b). Plaintiffs indicate that the putative class includes those Black businesses who, within the applicable class period, repaid the City loan amounts, or were subject to loan collection procedures by the City. This is a distinct group from the retaliatory action class, which plaintiffs assert are united by having experienced adverse action by the City for speaking out in a public forum about what they perceived to be the City's allegedly discriminatory policies. These two groups cannot be harmonized as a single class. While these two groups may overlap, plaintiffs have chosen to define these groups differently and this affects the court's analysis.

Defendants assert that the plaintiffs should be divided into four separate classes based upon the fact that plaintiffs allege four different methods of discriminatory treatment against Black businesses by the City. The Supreme Court has raised serious doubts about "across-the-board" claims of discrimination, but only in the area of typicality rather than class definition. See East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395 (1977); General Tel. Co. v. Falcon, 457 U.S. 147 (1982). Thus, defendants' arguments fail.

#### a. Subclass One

Plaintiffs have defined the class as businesses owned or operated by Black persons that repaid the City loans ranging from one dollar to fifteen million dollars, as well as Black businesses subject to loan collection by the City for the class period. While the range of repayment is broad, all

1  of the plaintiffs' proposed criteria are objective in nature, and do not require the court to determine
2  the merits of the individual class members claims.

3  Defendants argue that the class definition is overbroad because it assumes that any and all
4  Black business owners who sought loans from the City after July 1, 2003 can be included in the
5  class.  Plaintiffs assert that certification of this class is appropriate because the City has in place a
6  policy or practice of discriminating against Black business owners in myriad ways.  International
7  Molders' and Allied Workers' Local Union No. 164, et al. v. Nelson, 102 F.R.D. 457 (N.D. Cal.
8  1983) (Aguilar, J.), is instructive.  In Int'l Molders', plaintiffs brought an action challenging the
9  allegedly illegal policies of the United States Immigration and Naturalization Service and the Untied
10 States Border Patrol.  Id. at 460.  The proposed class was defined as including

> all persons of Hispanic or other Latin American ancestry, residing or
> working within the jurisdiction of the San Francisco District Office of
> the United States Immigration and Naturalization Service (INS) and/or
> the Livermore Border Patrol Sector, who have in the past, are now, or
> may in the future be subjected to the policies, practices and conduct of
> INS and/or the Border Patrol during the course of INS area control
> operations directed at places of employment.

15 Id.  Judge Aguilar held that the proposed class definition was not too vague in that it included all
16 persons of particular ethnicity who had been or would become affected by defendant's practices.
17 Plaintiffs were allowed to define the scope of the putative class "by the activities of the defendants."
18 Id. at 464.  In the instant action, plaintiffs have similarly proposed a class of persons united by
19 objective factors, and subjected to allegedly discriminatory practices.

20 Defendants further argue that plaintiffs have not adequately identified the putative class
21 because the class definition requires all class members to have suffered from the alleged
22 discriminatory practices.  This argument misses the mark.  When rejecting class certification based
23 on overbreadth, the problem lies in the court's ability to ascertain the class, not whether the putative
24 class members have been aggrieved.  See Mateo v. M/S Kiso, 805 F. Supp. 761, 773 (N.D. Cal.
25 1992) (Jensen, J.).  Plaintiffs putative class is based on the objective factors of business ownership,
26 race, and indebtedness to the City, and therefore is sufficiently defined.

b.  Subclass Two

Plaintiffs have described a second group of class members, which relies upon the state of mind of the individual members, i.e., it includes only those Black persons involved in Black businesses who spoke out publically about what they perceived as discriminatory practices by the City.  Proposed class definitions based solely or in large part upon the state of mind of the individual claimants have been held inadequate because of the subjectivity of that determination.  See Simer v. Rios, 661 F.2d 655, 669 (7th Cir. 1981); see also 5 James Wm. Moore et al., Moore's Federal Practice § 23.21 (3d ed. 2004).  This proposed class definition is therefore rejected as it relies upon the subjective state of mind of the class members.[2]

While the court has the power to modify proposed class definitions to make them sufficiently definite, see Hagen v. City of Winnemucca, 108 F.R.D. 61, 64 (D. Nev. 1985), this is not an instance in which the court deems such a revision appropriate because, as discussed below, the class certification motion nonetheless fails.[3]

2.  Numerosity

Pursuant to Rule 23, the class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  As a general rule, classes numbering greater than 41 individuals satisfy the numerosity requirement.  See 5 James Wm. Moore et al., Moore's Federal Practice § 23.22[1][b] (3d ed. 2004).  Although plaintiffs need not allege the exact number or identity of class members to satisfy the numerosity prerequisite, mere speculation as to the number of parties involved is not sufficient to satisfy the numerosity requirement.  See Freedman v. Louisiana-Pac. Corp., 922 F. Supp. 377, 398 (D. Or. 1996); 7 Wright, Miller, & Kane, Federal Practice and Procedure § 1762 (3d ed. 1995).  The plaintiff  "must proffer evidence of the number of members in the purported class, or at least a reasonable estimate of that number."  5 James Wm. Moore et al., Moore's Federal Practice § 23.22[3] (3d ed. 2004).

a.  Subclass One

Plaintiffs assert that the class includes approximately 25-30 identified Black businesses with current loans with the City and about 100 more who at one time either borrowed money from the City or sought to borrow money from the City.  Plaintiffs seek to include within their estimate of the

7

class size those Black businesses who sought to borrow money from the City but were denied. Defendants argue that those Black businesses that submitted loan proposals, but were denied funding, cannot be factored into the putative class affected by the alleged discriminatory practices in loan collection and management. The court agrees.

Including Black businesses who were denied City loans squarely contradicts the plaintiffs' definition of the proposed class as those Black businesses who received loans and were forced to repay them or those Black businesses that were subject to discriminatory loan collection procedures. Black businesses who were never awarded City loans, never repaid any amount of money or were never subjected to loan collection procedures cannot be included within this definition and, thus, within the size estimate of the putative class.

Plaintiffs include a study by the non-profit organization Oakland Citizen's Committee for Urban Renewal ("OCCUR") to demonstrate numerosity. In 2004, OCCUR conducted a study of the City's contracting and commercial lending programs. Glover Dec. ¶ 2. This study indicates that in 2004 a total of twenty-four Black-owned or operated businesses had City loans. Glover Dec., Exh. 1. The applicable class period for plaintiffs' putative class is July 1, 2003 to the present. If there were twenty-four Black-owned or operated businesses with City loans at one point in 2004, the size of plaintiffs' class is likely greater than twenty-four.

In Tietz v. Bowen, 695 F. Supp. 441 (N.D. Cal. 1987) (Orrick, J.), the court certified a class of twenty-seven architects and engineers employed by the San Francisco office of the Regional Operations for Facilities Engineering and Construction in 1984. The court stated that "[w]hile the class . . . only include[s] about twenty-seven members, the class members are geographically diverse and . . . may not have the means to bring individual suits." Id. at 445. Given that the sheer number of class members was not large enough to make joinder impracticable by itself, the court considered the alternative factors of geographic diversity and the ability of the individual claimants to bring individual suits.

There is no geographic diversity among the putative class members as all potential members of the class are Oakland business owners. Furthermore, the identities of these persons are readily ascertainable from City records. Plaintiffs have likewise failed to demonstrate that there are any

significant impediments preventing individual class members from initiating an individual action against the City or joining this lawsuit as named plaintiffs. Where individual claimants have considerable financial stakes in the outcome of the litigation, individual suits are more likely and joinder is unlikely to be impracticable. In sum, plaintiffs have failed to demonstrate that the putative class is so numerous that joinder is impracticable.

### b. Subclass Two

For the retaliatory action subclass, plaintiffs have offered no evidence, beyond the declarations of the named plaintiffs, that any of the potential class members suffered adverse action by the City for public comments about what they perceived as the City's discriminatory treatment of Black-owned and operated businesses. Plaintiffs have not even minimally demonstrated that any other Black business owners or operators spoke out publicly about the City's allegedly discriminatory treatment. With the exception of the claims of the three named plaintiffs, there is no evidence whatsoever to support a finding by the court that such a class of individuals exists, much less a numerous one. Thus, the numerosity requirement has not been satisfied with respect to this particular subclass.

### 3. Commonality

To fulfill the commonality prerequisite of Rule 23(a)(2), plaintiff must establish that there are questions of law or fact common to the class as a whole. Fed. R. Civ. P. 23(a)(2). Rule 23(a)(2) does not mandate that each member of the class be identically situated, but only that there be substantial questions of law or fact common to all. See Harris v. Palm Spring Alpine Estates, Inc., 329 F.2d 909, 914 (9th Cir. 1964). Individual variation among plaintiffs' questions of law and fact does not defeat underlying legal commonality, because "the existence of shared legal issues with divergent factual predicates is sufficient" to satisfy Rule 23. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). The Ninth Circuit has viewed the requirements of Rule 23(a)(2) to be fairly characterized as "minimal." Id.

Plaintiffs assert the putative class is united by the following common policies and practices: (1) the City's policy and practice of outsourcing its lending and collection operations to an independent contractor with the discretion to make lending and collection decisions; (2) the City's

9

1  decision not to review the grounds upon which various loan collection and management decisions
2  are made; (3) the City's failure to track the racial and ethnic identities of borrowers; and (4) the
3  City's retaliatory actions against those who use public forums to complain about the City's
4  discriminatory lending and collection practices.  Plaintiffs have offered evidence of the foregoing
5  issues by means of declarations, statistical evidence, and circumstantial and anecdotal evidence.

6  The putative class representatives testified to being: (1) subjected to different loan terms than
7  non-Black businesses; (2) denied the opportunity to defer repayment, apply loan loss reserves and
8  loan forgiveness; and (3) subjected to aggressive loan collection action and retaliation for
9  complaining about the City's lending practices in public forums.  In addition, plaintiffs offer the
10 declarations of several non-class members purporting to establish that the Oakland City Council
11 stereotypes Blacks as incapable of managing large businesses.  Plaintiffs argue that the 2004
12 OCCUR study and the 2007 Fairness study bolster their discrimination claims by providing evidence
13 of statistical disparities in lending and contracting.

### a.   Subclass One

15 Plaintiffs offer a combination of various forms of evidence to support their contention that
16 questions of law or fact are common to the putative class.  Relying on Dukes I, plaintiffs argue that a
17 combination of statistical, anecdotal, and class member testimony "raises an inference that
18 [defendants] engage[ ] in discriminatory practices affect[ing] all plaintiffs in a common manner."
19 Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 166 (N.D. Cal. 2004) (Jenkins, J.).

#### i.   OCCUR Study

21 In 2004 the Oakland Black Caucus requested that OCCUR conduct a study of the city of
22 Oakland's contracting and commercial lending programs.  Glover Dec. ¶ 1.  Excerpts of the OCCUR
23 study provided by plaintiffs demonstrate that of the total commercial loans given by the City, only
24 14% went to African-Americans.  A detailed survey was conducted of 63 loans demonstrating that
25 71% of the loans in default belonged to African-Americans.

26 Defendants argue that the OCCUR study fails to demonstrate that discriminatory policies are
27 common to the class because it did not examine the policies or details of the loan approval process
28 itself.  While defendants are correct that the OCCUR study fails to provide direct evidence of

discriminatory policies or practices by the City in lending collection and management, the study does provide some evidence that African-American borrowers tend to default on City loans at a much higher rate than non-African-American borrowers. The significance of this latter fact is not clear on the current record before the court. But at this stage of the proceeding the court is limited to determining "whether the evidence is sufficient to demonstrate common questions of fact warranting certification of the proposed class, not whether the evidence ultimately will be *persuasive* to the trier of fact." Dukes, 474 F.3d at 1229 (internal quotations and citations omitted).

                ii.      Fairness in Purchasing and Contracting Disparity Study

The 2007 Fairness in Purchasing and Contracting Disparity Study ("Fairness study") was conducted to determine "if the City was actively or passively discriminating against minority and women-owned business enterprises." Guillory Dec., Exh. 4 at 1. The Fairness study focused on three categories of contracts: formal prime contracts, informal prime contracts, and subcontracts. The Fairness study found that there was a statistically significant underutilization of minority and women-owned business enterprises in many of these contracts. Id. at 11.

Defendants argue that the Fairness study does not provide support for plaintiffs' claims of discriminatory common lending policies because it was based on City contracting. The court agrees. While the results of the Fairness study suggest a serious problem in the area of City contracting, plaintiffs seek to impermissibly stretch this study. Plaintiffs' request this court freely transfer statistical findings relating to one area of City business, contracting, to another independent area, loan collection and management. The court is not persuaded that there is a logical reason for doing so.

                iii.      Circumstantial and Anecdotal Evidence

Plaintiffs offer the declarations of three witnesses who state they overheard City Council members making racially derogatory statements about the ability of Black business owners to manage large loans. Defendants argue that these statements have already been considered and found to be lacking as proof of intentional discrimination. Even though this evidence was considered by Judge Alsup in Brooks-Hamilton's individual suit against the City, the evidence can be reconsidered

11

1 here, not as proof of intentional discrimination, but rather as evidence supporting an inference of
2 class-wide discrimination.
3   Plaintiffs have also offered the putative class representatives' declarations suggesting that
4 they have been subject to discrimination with respect to: (1) loan amounts; (2) loan repayment terms;
5 and (3) collection of loans in default. Plaintiffs further argue that the City's outsourcing of lending
6 and collection practices to an independent contractor allows for subjective decision making,
7 enabling discriminatory treatment of Black businesses.
8   In sum, plaintiffs argue that the combination of statistical evidence with anecdotal evidence
9 of discrimination supports a finding that common questions of law or fact predominate. See Dukes
10 v. Wal-Mart Stores, Inc., 222 F.R.D. at 166. Under the minimal and permissive standards set forth
11 by Rule 23(a)(2), plaintiffs have shown commonality as to subclass one.

### b. Subclass Two

13 The named class representatives all assert, via declarations, that they have suffered
14 retaliatory actions by the City for speaking out in public forums about what they perceived to be the
15 City's discriminatory actions. No other evidence has been offered that any other class member has
16 suffered retaliatory action by the City for speaking out in a similar manner. The plaintiffs' burden
17 under 23(a)(3) is concededly "minimal," however, without some evidence that questions of law or
18 fact are common to the retaliatory action subclass as a whole, the court cannot find that plaintiffs
19 have satisfied their burden under this permissive standard.

### 4. Typicality

21 Under Rule 23(a)(3), the claims of the representative plaintiff must be typical of the claims of
22 the class. To be considered typical for purposes of class certification, the named plaintiff need not
23 have suffered an identical wrong. See Hanlon, 150 F.3d at 1020. Rather, the claims of the putative
24 class must be "fairly encompassed by the named plaintiff's claims." General Tel. Co. of the
25 Southwest v. Falcon, 457 U.S. 147, 156 (1982) (internal quotation omitted).
26   The named plaintiffs argue that they have each suffered from the City's general policy of
27 discrimination in loan management and collection. Plaintiffs concede that there are factual
28 differences between their individual claims, but they deem those differences to be irrelevant since all

1   class members proceed under the same legal theory: that the City's commercial and redevelopment
2   lending and collection policies systematically disadvantage Black businesses.

3   Defendants argue that it is impossible to prove discrimination without separately examining
4   each loan application. Relying on Hanon, defendants argue that typicality cannot exist if the class
5   representatives' claims are subject to unique defenses central to the litigation. Defendants assert
6   they will raise unique defenses to each of plaintiffs' claims as each loan application necessarily
7   varies depending on the personal assets and credit risks of each loan applicant.

8   Buycks-Roberson v. Citibank Fed. Sav. Bank, 162 F.R.D. 322 (N.D. Ill. 1995), is instructive.
9   In Citibank, a group of African-American plaintiffs sued Citibank Federal Savings Bank
10  ("Citibank") alleging racial discrimination and discriminatory redlining practices in Citibank's home
11  loan application approval process. Id. at 325. Citibank similarly claimed that a finding of typicality
12  could not be found because "each decision to grant or deny a mortgage loan application depends
13  upon a myriad of individual facts including income, existing credit obligations, credit history,
14  employment history, the amount of financing being sought, and the value of the property being
15  financed." Id. at 333. The district court found Citibank's argument to be unavailing. "Citibank
16  misses the point. It is the allegedly discriminatory subjective application of Citibank's neutral
17  underwriting criteria as a *whole* that may have adversely impacted the class. . . . [T]he named
18  plaintiffs' claims arise out of the same alleged course of conduct giving rise to the claims of the
19  other class members." Id. The court ultimately found that the plaintiffs satisfied the typicality
20  requirement by showing that the class representatives' claims had the "same essential characteristics
21  as the potential class, *i.e.*, they were African-Americans who were allegedly denied home loans
22  based upon their race or the racial composition of their neighborhoods." Id. (internal quotation
23  omitted).

24  Citibank is directly applicable to the instant action. Pete, Jeffery, and Hamilton are Black
25  business owners who claim to have suffered from the City's discriminatory policies or practices in
26  loan collection and management. The named plaintiffs seek to represent a class of similarly situated
27  Black business owners. While the individual claims of the plaintiffs vary factually, that variation
28

13

1  does not preclude a finding that the typicality requirement has been satisfied. Thus, with respect to
2  subclass one, plaintiffs have successfully satisfied the typicality requirement of Rule 23(a)(3).
3       Subclass two fails the typicality prong for primarily the same reasons as described above in
4  the commonality section.

          5.     <u>Adequacy</u>

Rule 23(a)(4) dictates that the representative plaintiff must fairly and adequately protect the interests of the class. To satisfy constitutional due process concerns, unnamed class members must be afforded adequate representation before entry of a judgment that binds them. See <u>Hanlon</u>, 150 F.3d at 1020 (citing <u>Hansberry v. Lee</u>, 311 U.S. 32, 42–43 (1940)). "Adequate representation depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." <u>Crawford v. Honig</u>, 37 F.3d 485, 487 (9th Cir. 1994) (internal quotation omitted). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" <u>Hanlon</u>, 150 F.3d at 1020 (citation omitted).

          a.     <u>Class Representatives</u>

Despite the conclusory nature of plaintiffs' assertions of adequacy as class representatives, the court, after weighing the applicable factors, finds the proposed representatives to be sufficiently adequate. A review of the proposed class representatives' declarations reveals an understanding of the nature of the claims bought in this action and the court has not found any evidence tending to demonstrate the existence of conflicts of interest among the named plaintiffs, their counsel, and the other class members.

          b.     <u>Class Counsel</u>

Plaintiffs are represented by Dorothy D. Guillory, a sole practitioner with 20 years of experience litigating employment discrimination and civil rights cases. Guillory Dec. ¶¶ 3–4. Ms. Guillory concedes that she has no experience conducting class actions but asserts that she is "experienced and qualified enough to vigorously prosecute this action through the named representatives." Guillory Dec. ¶ 5. The papers filed with the court do not rise to the level of

UNITED STATES DISTRICT COURT
For the Northern District of California

proficiency the court would expect from an experienced trial attorney as arguments are often addressed in cursory fashion and with only a side-long glance at case law.

Ms. Guillory, however, has averred that she is "actively seeking the assistance of other experienced class counsel." Guillory Dec. ¶ 6. While the court has some serious misgivings about Ms. Guillory's ability to adequately litigate the current action, the court finds that if she associates an experienced class-action attorney she can provide adequate representation.

### B. Rule 23(b)(2) Requirements

A party seeking certification of a class under Rule 23(b)(2) also bears the burden of establishing that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making" injunctive relief appropriate. Fed. R. Civ. P. 23(b)(2). Class actions certified under Rule 23(b)(2) are "not limited to actions requesting only injunctive or declaratory relief, but may include cases that also seek monetary damages" where the claim for injunctive relief is the primary claim. Probe v. State Teachers' Ret. Sys., 780 F.2d 776, 780 (9th Cir. 1986). For a class to be certified under Rule 23(b)(2), "[i]t is sufficient if class members complain of a pattern or practice that is generally applicable to the class as a whole[,] [e]ven if some class members have not been injured by the challenged practice." Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir. 1998).

While Plaintiffs seek compensatory damages and attorneys' fees and costs, they also pray for declaratory and injunctive relief. The court cannot say at this stage that damages predominate. If plaintiffs can establish the discriminatory policies of which they complain, they would certainly be entitled to injunctive and declaratory relief. Of course, even as individual plaintiffs, not in a class action setting, they would be entitled to the same relief which would benefit others who had been or are subject to such policies.

Defendants argue that the since the loan process requires individualized consideration of every applicant, the legal differences of each individual class members' claim will make this action unmanageable as a 23(b)(2) class action. The Ninth Circuit in Walters stated that, "[a]lthough common issues must predominate for class certification under Rule 23(b)(3), no such requirement

15

1  exists under 23(b)(2). It is sufficient if class members complain of a pattern or practice that is
2  generally applicable to the class as a whole." Id. In the instant action plaintiffs claim that they are
3  subject to a common policy or practice of racial discrimination by the City. This alleged policy only
4  affects Black business owners and operators who have received City loans. Thus, plaintiffs have
5  satisfied the requirements of Rule 23(b)(2) by asserting the City has acted in a manner applicable to
6  the putative class as a whole. See Buycks-Roberson v. Citibank Fed. Sav. Bank, 162 F.R.D. 322
7  (N.D. Ill. 1995).

### C. Rule 23(b)(3) Requirements

Class certification pursuant to Rule 23(b)(3) requires the plaintiff to establish that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

The predominance inquiry "focuses on the relationship between the common and individual issues." Local Joint Executive Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162 (9th Cir. 2001). Consequently, the presence of common issues of fact or law sufficient to satisfy the requirements of Rule 23(a)(2) is not by itself sufficient to show that those common issues predominate. Hanlon, 150 F.3d at 1022. Nonetheless, "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Id. (internal quotations omitted). The predominance inquiry focuses on whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." Culinary/Bartender Trust Fund, 244 F.3d at 1162 (quoting Amchem, 521 U.S. at 623). Central to this inquiry is "the notion that the adjudication of common issues will help achieve judicial economy." Zinser, 253 F.3d at 1189 (quoting Valentino v. Carter- Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996)).

Plaintiffs assert three main legal questions are common to the class: (1) whether the City's conduct with respect to lending and loan collection violates 41 U.S.C. § 1983, by causing a policy of

1  discrimination against Black businesses; (2) whether the City's conduct with respect to lending and
2  loan collection violates 41 U.S.C. § 1981 and Title VI because it has a disparate impact on Black
3  businesses that is not justified by a business necessity; and (3) whether the City retaliated against the
4  named plaintiffs as part of a policy and practice.

5  The plaintiffs have not offered sufficient evidence to allow this court to determine whether
6  there are individualized issues of fact and how they relate to the common issues.  Certainly questions
7  of individual plaintiffs' financial condition, credit history, employment, income, debt and other such
8  matters will weigh heavily in the adjudication and are likely to predominate.  Plaintiffs' evidence was
9  barely sufficient to satisfy the minimal requirements of Rule 23(a)(2) and falls well short of the more
10 stringent predominance inquiry.  The court notes that the Buycks-Roberson case which is persuasive
11 on the issue of typicality discussed above affords no help to plaintiffs on the 23(b)(3) issues since the
12 court there certified a class only under 23(b)(2).  162 F.R.D. at 328, 334–338.  As plaintiffs fail to
13 demonstrate predominance, the court finds no call to review whether a class action is superior to
14 other means of adjudication.

### D. Evidentiary Objections

Defendant has made a number of objections to evidence submitted by plaintiffs.  In light of this court's ruling on plaintiffs' motion, the court sees no need to make a ruling on the objections.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to certify pursuant to Rule 23(b)(2) is DENIED. Plaintiff's motion to certify pursuant to Rule 23(b)(3) is DENIED.

Dated:  November 2, 2007

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

UNITED STATES DISTRICT COURT
For the Northern District of California

ENDNOTES

1.      Unless otherwise noted, the facts set forth below are drawn from the allegations in plaintiffs' Second Amended Compliant.

2.      This court has previously held that all claims asserted by Hamilton and BH Enterprises, involving the disbursement and management of City loans are barred by claim and issue preclusion. Memorandum and Order re: Defendants' Motion to Dismiss, Docket No. 34 at 13:22–29.  Since the scope of the proposed class is limited to these issues, Hamilton and BH Enterprises are now precluded from joining this class or serving as its representative.

3.      The retaliatory action subclass could have been defined differently to avoid these definitional flaws, however for reasons discussed in this order, plaintiffs' motion for class certification would fail nonetheless.